1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PAMELA MADISON, an individual on behalf of herself and others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>ONESTAFF MEDICAL LIMITED LIABILITY COMPANY,<br><br>　　　　　　Defendant. | Case No.: 1:20-cv-01384-AWI-JLT<br><br>FINDINGS AND RECOMMENDATION GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT<br><br>(Doc. 17) |

　　　　Pamela Madison seeks preliminary approval of a class action settlement reached with OneStaff Medical Limited Liability Company. (Doc. 17.) Plaintiff requests: (1) preliminary approval of the settlement, (2) approval of the proposed class for purposes of the settlement; (3) approval of the FLSA collective for purposes of the settlement, (4) appointment of Plaintiff as representative of the settlement class and collective; (5) appointment of Hayes Pawlenko LLP as counsel for the settlement class and collective; (6) approval of the proposed class notice, (7) appointment of CPT Group, Inc. as the settlement administrator; and (8) a final approval hearing. (Doc. 17 at 2-3.) The Court has considered the proposed settlement between the parties, and the proposed class notice and documents. For the following reasons, the Court recommends Plaintiff's motion for preliminary approval of class settlement be **GRANTED**.

///

## BACKGROUND

OneStaff places hourly healthcare workers on short term travel assignments at medical facilities throughout the nation (Travelers), including nurses and technicians, on temporary travel assignments at hospitals and clinics throughout the nation. (Doc. 18 at 6; see Doc. 19-1, Pawlenko Decl. ¶ 6.) Plaintiff was employed by OneStaff as a Traveler in Bakersfield, California between September 2019 and December 2019. (Doc. 18 at 8; Pawlenko Decl. ¶ 7.)

The complaint, filed on September 30, 2020, asserts three putative class claims under California law: (1) failure to pay overtime under California Labor Code § 510; (2) unfair business practices under California Business & Professions Code § 17200, et seq.; and (3) waiting time penalties under California Labor Code § 203. (Doc. 1, Complaint.) In addition, the complaint asserts a putative collective claim under the FLSA, 29 U.S.C. § 201, et seq. (Id.) Each of these claims is premised on OneStaff's exclusion of per diem and allowance payments from Travelers' overtime wages. (See Doc. 1 at ¶¶ 11-18).

Plaintiff seeks to represent a class of Travelers "employed by OneStaff in California at any time since September 30, 2016 who received hourly per diems, hourly housing allowances, and/or hourly travel allowances." (See Doc. 1 at ¶ 20). Plaintiff also seeks to represent a collective of Travelers "employed by OneStaff in California at any time since September 30, 2016 who received hourly per diems, hourly housing allowances, and/or hourly travel allowances." (See Doc. 1 at ¶ 19).

OneStaff filed its answer on December 1, 2020 denying any and all alleged liability and asserting multiple affirmative defenses. (See Doc. 5, Answer.)

Prior to reaching settlement, Plaintiff engaged in both formal and informal discovery regarding the policies challenged in this lawsuit, OneStaff's defenses to liability and class certification, and the potential damages owing to members of the putative class and collective. (See Pawlenko Decl. ¶ 8.)

Plaintiff served two sets of requests for admissions, three sets of interrogatories, and three sets of requests for production of documents. (Pawlenko Decl. ¶ 9.) Through this formal discovery, Plaintiff learned that most of the putative class and collective had signed arbitration agreements with class and collective action waivers. (See Pawlenko Decl. ¶ 10.) The discovery revealed that of the then-561 putative class members, all but 82 had waived their class action rights, and of the then-2,188

putative collective members, all but 75 waived their collective action rights. (See Pawlenko Decl. ¶ 10.) Plaintiff also obtained a copy of the applicable arbitration documents and determined that the class and collective action waivers are likely enforceable under Epic Systems Corp. v. Lewis, 138 S.Ct. 1612 (2018). (See Pawlenko Decl. ¶ 11.)

On February 28, 2021, pursuant to a stipulation between the parties, the Court stayed the case to enable the parties to explore the possibility of an early settlement of the action. (See Doc. 14.) Plaintiff thereafter informally requested and obtained: (1) the total number of California overtime hours worked by the putative class, including hours worked by putative class members who had waived their class action rights; (2) the total number of California overtime hours worked by the putative class, excluding hours worked by putative class members who had waived their class action rights; (3) the total number of FLSA overtime hours worked by the putative collective, including hours worked by putative collective members who had waived their collective action rights; (4) the total number of FLSA overtime hours worked by the putative collective, excluding hours worked by putative collective members who had waived their collective action rights; (5) the average number of weekly contracted hours for the putative class; (6) the average number of weekly contracted hours for the putative collective; (7) the average amount of per diems, housing allowances, and travel allowances paid to the putative class; and (8) the average amount of per diems, housing allowances, and travel allowances paid to the putative collective. (See Pawlenko Decl. ¶ 12.) Based on the data provided, Plaintiff calculated the additional California overtime allegedly owing to the putative class and the additional FLSA overtime allegedly owing to the putative collective due to the exclusion of per diem and allowance payments from Travelers' regular rates of pay. (See Pawlenko Decl. ¶ 13.)

On April 15, 2021, the parties mediated with former federal magistrate judge Hon. Jan M. Adler and ultimately agreed on the principal terms of settlement. (See Pawlenko Decl. ¶ 14.) On May 26, 2021, following further negotiations, the parties finalized the present joint stipulation and settlement agreement. (See Pawlenko Decl. ¶ 15); Exh. 2 (Settlement).)

### THE PROPOSED SETTLEMENT

Pursuant to the proposed settlement (the "Settlement"), the parties agree to a gross settlement amount not to exceed $525,000.00. (Doc. 18 at 10; Settlement ¶ 4.1.)

**I.      Payment Terms**

The Settlement provides a maximum recovery of $525,000.00. (Doc. 18 at 10; Settlement ¶ 4.1.) If the Court approves the Settlement, the following estimates the breakdown of payments from this amount:

- $14,000 for settlement administration fees (Pawlenko Decl. ¶ 18; Exh. 3 (CPT Bid); <u>see also</u> Settlement ¶ 4.9);

- $5,250 for a service award to the plaintiff (Settlement ¶¶ 4.7, 7.3)

- $131,250 for attorneys' fees and $15,000 in costs (Settlement ¶ 4.8.)

After the above deductions from the gross settlement amount, the balance of approximately $348,500 will constitute the net settlement amount available for distribution to the settlement class and collective. (<u>See</u> Settlement ¶ 1.17.) The Settlement provides that $9,550 of the net settlement amount will be allocated to the settlement collective. (<u>See</u> Settlement ¶ 4.3.) The remainder of the net settlement amount will be allocated to the settlement class. (<u>See</u> Settlement ¶ 4.4.) The average individual settlement payment is currently estimated to be approximately $505. (Pawlenko Decl. ¶ 19.)

Members of the settlement class are not required to submit a claim form in order to receive their pro rata share of the net settlement amount. (<u>See</u> Settlement ¶ 4.5.) Instead, unless an individual chooses to affirmatively opt-out of the Settlement, each member of the settlement class will automatically receive his or her pro rata share of the net settlement amount allocated to the settlement class. (<u>See</u> Settlement ¶ 4.5.) The pro rata shares of those settlement class members who choose to opt-out, if any, will be redistributed on a pro rata basis to participating settlement class members. (<u>See</u> Settlement ¶ 4.6.)

As required by the FLSA, members of the settlement collective are required to affirmatively opt-in and become party plaintiffs as a condition of receiving their pro rata share of the net settlement amount allocated to the settlement collective. (<u>See</u> Settlement ¶ 4.5.) The pro rata shares of those settlement collective members who do not opt-in, if any, will be redistributed on a pro rata basis to participating settlement collective members. (<u>See</u> Settlement ¶ 4.6.)

The amount of the net settlement allocated to the settlement class will be divided among the settlement class members, pro rata, based on the number of workweeks in which California overtime

was worked within the class period, *i.e.*, from September 30, 2016 through September 19, 2020. (See Settlement ¶ 4.4.) The net settlement amount allocated to the settlement class will first be divided by the aggregate number of workweeks in which California overtime was worked by all class members during the class period to determine the monetary value of each qualifying workweek. (See Settlement ¶ 4.4.) The settlement payment to each individual class member will then be calculated by multiplying the number of qualifying workweeks worked by that individual by the monetary value of each qualifying workweek. (See Settlement ¶ 4.4.)

Similarly, the amount of the net settlement allocated to the settlement collective will be divided among the settlement collective members, pro rata, based on the number of workweeks in which FLSA overtime was worked within the collective period, i.e. from September 30, 2017 through September 19, 2020. (See Settlement ¶ 4.3.) The net settlement amount allocated to the settlement collective will first be divided by the aggregate number of workweeks in which FLSA overtime was worked by all collective members during the collective period to determine the monetary value of each qualifying workweek. (See Settlement ¶ 4.3.) The settlement payment to each individual collective member will then be calculated by multiplying the number of qualifying workweeks worked by that individual by the monetary value of each qualifying workweek. (See Settlement ¶ 4.3.)

Settlement checks will remain valid for 180 days. (See Settlement ¶ 4.13.) Uncashed funds will be deposited with the State of California Controller's Office pursuant to the Unclaimed Property Law. (See Settlement ¶ 4.13.)

## II.     Releases

After final approval and upon the settlement administrator's disbursement of the funds allocated to the settlement class, all settlement class members who have not opted-out of the Settlement will release all claims "which relate to the wage and hour and California Labor Code claims alleged in the Complaint or relate to other claims that could have been alleged based on the facts asserted in the Complaint." (See Settlement ¶¶ 1.25, 7.1.) Upon the settlement administrator's disbursement of the funds allocated to the settlement collective, all settlement collective members who opted-in to the Settlement will release all claims "which relate to the FLSA unpaid overtime claim alleged in the Complaint or relate to other FLSA claims that could have been alleged based on the

1 facts asserted in the Complaint." (See Settlement ¶¶ 1.26, 7.2.)

2 **III.     Objections and Opt-Out Procedure**

3           All members of the settlement class and collective will be sent, via First Class Mail, a notice of

4 the Settlement. (See Pawlenko Decl. ¶ 20; Settlement ¶ 1.18); Exh. 4 (Notice).) Settlement class

5 members will have 45 days to opt-out of the Settlement, object to the Settlement, or dispute the

6 number of qualified workweeks attributed to them. (See Settlement ¶ 6.1.) Likewise, settlement

7 collective members will have 45 days to opt-in to the Settlement, object to the Settlement, or dispute

8 the number of qualified workweeks attributed to them. (See Settlement ¶ 6.1.)

9           Settlement class members who wish to opt-out need only mail a signed letter to the settlement

10 administrator expressing an intention to opt-out that contains the individual's name, address, and

11 telephone number. (See Settlement ¶ 6.4.) Settlement collective members who wish to opt-in need

12 only complete the "FLSA Consent Form" enclosed with the notice and return it to the settlement

13 administrator. (See Settlement ¶ 6.3; Exh. 4 (Notice).) All FLSA Consent Forms received will be filed

14 with the Court. (See Settlement ¶ 6.3.)

15           Individuals who wish to object to the Settlement need only mail a written objection to the

16 settlement administrator expressing an intention to object to the Settlement and the reasons for the

17 objection that contains the individual's name, address, telephone number, and the last four digits of his

18 or her social security number (for identity verification purposes). (See Settlement ¶ 6.8.)

19                        **PRELIMINARY APPROVAL OF A CLASS SETTLEMENT**

20           When parties settle the action prior to class certification, the Court has an obligation to "peruse

21 the proposed compromise to ratify both the propriety of the certification and the fairness of the

22 settlement." Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003). Preliminary approval of a class

23 settlement is generally a two-step process. First, the Court must assess whether a class exists. Id. (citing

24 Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620 (1997)). Second, the Court must "determine

25 whether the proposed settlement is fundamentally fair, adequate, and reasonable." Id. (citing Hanlon v.

26 Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 2998)). The decision to approve or reject a settlement is

27 within the Court's discretion. Hanlon, 150 F.3d at 1026.

28 ///

**I.      Class Certification**

Parties seeking class certification bear the burden of demonstrating the elements of Rule 23 are satisfied, and "must affirmatively demonstrate . . . compliance with the Rule." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011); Doninger v. Pacific Northwest Bell, Inc., 563 F.2d 1304, 1308 (9th Cir. 1977).

**A.      Rule 23(a) Requirements**

The prerequisites of Rule 23(a) "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." General Telephone Co. of the Southwest. v. Falcon, 457 U.S. 147, 155-56 (1982). Certification of a class is proper if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These prerequisites are generally referred to as numerosity, commonality, typicality, and adequacy of representation. Falcon, 457 U.S. at 156. If an action meets the prerequisites of Rule 23(a), the Court must consider whether the class is maintainable under one or more of the three alternatives set forth in Rule 23(b). Narouz v. Charter Communs., LLC, 591 F.3d 1261, 1266 (9th Cir. 2010).

**1.      Numerosity**

A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). This requires the Court to consider "specific facts of each case and imposes no absolute limitations." General Telephone Co. v. EEOC, 446 U.S. 318, 330 (1980). Although there is not a specific numerical threshold, joining more than one hundred plaintiffs is impracticable. See Immigrant Assistance Project of Los Angeles Cnt. Fed'n of Labor v. INS, 306 F.3d 842, 869 (9th Cir. 2002) ("find[ing] the numerosity requirement . . . satisfied solely on the basis of the number of ascertained class members . . . and listing thirteen cases in which courts certified classes with fewer than 100 members"). Here, the proposed class contains 689 individuals. (See Pawlenko Decl. ¶ 16.) Therefore, the class is sufficiently numerous.

///

### 2. Commonality

Rule 23(a) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement has been construed permissively; not all questions of law and fact need to be common. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). "However, it is insufficient to merely allege any common question." Ellis v. Costco Wholesale Corp., 657 F.3d 970, 981 (9th Cir. 2011). Commonality must be shown by a "common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Dukes, 564 U.S. at 338.

Plaintiff contends that all of the class claims hinge on a single common contention that is capable of classwide resolution. (Doc. 18 at 16.) Each claim is based on a challenge to OneStaff's common policy of excluding per diem and allowance payments from the regular rate of pay. (Doc. 18 at 16; see Pawlenko Decl. ¶ 21.) Plaintiff asserts that the hourly per diem and allowance payments are part of the regular rate of pay because they function to compensate for hours worked rather than reimburse for expenses incurred. (Doc. 18 at 16, citing Clarke v. AMN Servs., LLC, 987 F.3d 848, 854 (9th Cir. 2021) ("[W]hether payments increase, decrease, or both based on time worked provides an important indication as to whether the payments are functioning as compensation rather than reimbursement").)

Plaintiff further asserts that resolving the common question of whether the per diem and allowance payments were unlawfully excluded from the regular rate of pay will drive resolution of each claim asserted in this lawsuit. (Doc. 18 at 17.) Because of these common factual and legal issues, the Court finds the commonality requirement is satisfied.

### 3. Typicality

This requirement requires a finding that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The standards under this rule are permissive, and a claim or defense is not required to be identical, but rather "reasonably coextensive" with those of the absent class members. Hanlon, 150 F.3d at 1020. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct

8

which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks and citation omitted); see also Kayes v. Pac. Lumber Co., 51 F.3d 1449, 1463 (9th Cir. 1995) (the typicality requirement is satisfied when the named plaintiffs have the same claims as other members of the class and are not subject to unique defenses).

Plaintiff asserts that the Plaintiff and all other members of the settlement class alike, received per diem and allowance payments that were excluded from their regular rates of pay. (Doc. 18 at 17; see Pawlenko Decl. ¶ 22.) Accordingly, the Court finds the typicality requirement is satisfied.

### 4.    Fair and Adequate Representation

Absentee class members must be adequately represented for judgment to be binding upon them. Hansberry v. Lee, 311 U.S. 32, 42-43 (1940). Accordingly, this prerequisite is satisfied if the representative party "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[R]esolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 462 (9th Cir. 2000) (citing Hanlon, 150 F.3d at 1020).

According to the Plaintiff, there are no known conflicts between Plaintiff or her counsel and the settlement class, class counsel is experienced in wage and hour class actions and has been appointed class counsel in numerous other wage and hour cases, and has vigorously represented the interests of the settlement class. (Doc. 18 at 17; see Pawlenko Decl. ¶¶ 2-5, 23.) Therefore, the Court finds the class counsel to be adequate.

### B.    Rule 23(b)(3) Requirements

#### 1.    Predominance

First, common questions must "predominate" over any individual questions. While this requirement is like the Rule 23(a)(2) commonality requirement, the standard is much higher at this stage of the analysis. Dukes, 564 U.S. at 359; Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 624-25 (1997); Hanlon, 150 F.3d at 1022 (9th Cir. 1998). While Rule 23(a)(2) can be satisfied by even a single question, Rule 23(b)(3) requires convincing proof that the common questions "predominate." Amchem,

521 U.S. at 623-24; Hanlon, 150 F.3d at 1022.  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis."  Hanlon, 150 F.3d at 1022.

Plaintiff alleges that common questions predominate because all of the class claims hinge upon the common question of whether OneStaff's uniform policy and practice of excluding per diem and allowance payments from the regular rate of pay is unlawful. (Doc. 18 at 18; Pawlenko Decl. ¶ 21.) Plaintiff asserts that if this challenged policy and practice is illegal, liability to each class member will be established in unison. (Doc. 18 at 18.) Conversely, Plaintiff claims, if the challenged per diem and allowance policies are lawful, each class member's claims will fail in unison. (Id.) Class actions in which a defendant's uniform policies are challenged generally satisfy the predominance requirement of Rule 23(b)(3). See Palacios v. Penny Newman Grain, Inc., No. 1:14-cv-01804-KJM, 2015 WL 4078135, at *5-6 (E.D. Cal. July 6, 2015); Clesceri v. Beach City Investigations & Protective Servs., Inc., No. cv-10-3873-JST RZX, 2011 WL 320998, at *7 (C.D. Cal. Jan. 27, 2011). The Court therefore concludes that the predominance requirement has been met in this case.

### 2.     Superiority

Rule 23(b)(3) also requires a court to find "a class action is superior to other available methods for the fair adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). In resolving the Rule 23(b)(3) superiority inquiry, "the court should consider class members' interests in pursuing separate actions individually, any litigation already in progress involving the same controversy, the desirability of concentrating in one forum, and potential difficulties in managing the class action—although the last two considerations are not relevant in the settlement context."  See Palacios, 2015 WL 4078135, at *6 (citing Schiller v. David's Bridal Inc., No. 10-cv-0616-AWI-SKO, 2012 WL 2117001, at *10 (E.D. Cal. June 11, 2012)).

Plaintiff asserts that this lawsuit challenges the legality of an employer's uniform policy of excluding certain payments from the regular rate, such that a class action is a superior means of resolving the dispute. (Doc. 18 at 19.) The superiority requirement is satisfied here.

///

C.      **Conditional Certification of Collective Action under the FLSA**

As discussed above, plaintiffs seeking conditional certification of a collective action under the FLSA have the burden to show that they are "similarly situated" to other employee class members.  See Litty v. Merrill Lynch & Co., No. cv 14-0425 PA (PJWX), 2015 WL 4698475, at *6 (C.D. Cal. Apr. 27, 2015); see also Lewis v. Wells Fargo Co., 669 F. Supp. 2d 1124, 1127 (N.D. Cal. 2009).  When determining whether to conditionally certify the collective action, plaintiffs can show they are "'similarly situated' by making substantial allegations, supported by declarations or discovery, that 'the putative class members were together the victims of a single decision, policy, or plan.'"  Litty, 2015 WL 4698475, at *6; see also Lewis, 669 F. Supp. 2d at 1127.  Courts apply a lenient standard when determining whether to conditionally certify a collective.  See Syed v. M-I, L.L.C., No. 1:12-cv-01718-AWI-MJS, 2014 WL 6685966, at *2 (E.D. Cal. Nov. 26, 2014).

The proposed FLSA collective share the identical issues of law and fact, which are dispositive of their FLSA claims: whether OneStaff's uniform policy and practice of excluding per diem and allowance payments from their regular rates violated the FLSA. (See Pawlenko Decl. ¶ 24.) For all the reasons these groups satisfy the requirements for preliminary certification under Rule 23, the proposed FLSA collective also satisfies the FLSA's less stringent requirement that the members be "similarly situated."  Conditional certification of an FLSA collective is therefore appropriate.

## II.      **Evaluation of the Settlement Terms**

Settlement of a class action requires approval of the Court, which may be granted "only after a hearing and on finding that [the settlement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Approval is required to ensure settlement is consistent with Plaintiffs' fiduciary obligations to the class. See Ficalora v. Lockheed Cal. Co., 751 F.2d 995, 996 (9th Cir. 1985). The Ninth Circuit has set forth several factors to determine whether a settlement agreement meets these standards, including:

> the strength of plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

Staton, 327 F.3d at 959 (citation omitted). Further, a court should consider whether settlement is "the product of collusion among the negotiating parties." In re Mego Fin. Corp. Sec. Litig., 213 F.3d at 458

(citing Class Plaintiffs v. Seattle, 955 F.2d 1268, 1290 (9th Cir. 1992)). Reviewing the settlement terms, "[t]he court need not reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute." Class Plaintiffs, 955 F.2d at 1291 (internal quotation marks and citation omitted).

### A.    Strength of Plaintiff's Case

When evaluating the strength of a case, the Court should "evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." Adoma v. Univ. of Phoenix, Inc., 913 F. Supp. 2d 964, 975 (E.D. Cal. 2012) (quoting In re Wash. Pub. Power Supply Sys. Sec. Litig., 720 F.Supp 1379, 1388 (D. Az. 1989)). According to Plaintiff, the dispositive issue in this case is whether the per diem and allowance payments constitute "reasonable payments for traveling expenses, or other expenses, incurred by an employee in furtherance of his employer's interest and properly reimbursable by the employer." (Doc. 18 at 21, citing 29 U.S.C. § 207(e)(2).) Weighing in Plaintiff's favor is the fact that the per diem and allowance payments were tied to the number of hours worked. (Doc. 18 at 21.) While not conclusive, "[t]he fact that a payment varies with hours worked" is not merely "a relevant factor in that determination" but "often a particularly relevant one." (Doc. 18 at 21, citing Clarke v. AMN Servs., LLC, 987 F.3d 848, 856 (9th Cir. 2021).)

According to Plaintiff, weighing against Plaintiff is the fact that the Ninth Circuit declined to hold that "per diem payments that vary with hours worked must always be included in the FLSA's regular rate." (Id. (emphasis in original).) Instead, "determining whether a per diem must be included in the regular rate of pay is a case-specific inquiry that turns on whether the payments function to reimburse employees for expenses or instead operate to compensate employees for hours worked." (Id.) Plaintiff contends that unlike in Clarke, OneStaff only pays the per diem and allowance payments to employees who travel away from home and incur expenses, and employees cannot "bank" extra hours worked in one week to offset missed hours in another week. (Doc. 18 at 21.) Accordingly, this factor weighs in favor of preliminary approval of the Settlement.

### B.    Risks, Expenses, Complexity, and Likely Duration of Further Litigation

Approval of settlement is "preferable to lengthy and expensive litigation with uncertain

results." <u>Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.</u>, 221 F.R.D. 523, 529 (C.D. Cal. 2004). If the settlement were to be rejected, the parties would have to engage in further litigation. The time and expense of continued litigation could outweigh any additional recovery. Plaintiff contends that this factor weighs heavily in favor of settlement because 585 of the 689 settlement class members signed arbitration agreements with class action waivers that Plaintiff's counsel determined are likely enforceable under <u>Epic Systems Corp. v. Lewis</u>, 138 S.Ct. 1612 (2018). (Doc. 18 at 22; Pawlenko Decl. ¶¶ 11, 16.) Plaintiff asserts that there is a substantial risk that most settlement class members would be compelled to arbitrate their claims on an individual basis with all the costs and inefficiencies associated therewith. (Doc. 18 at 22.) Therefore, this factor weighs in favor of approval of the Settlement.

### C.    Amount Offered in Settlement

The Ninth Circuit observed "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" <u>Officers for Justice v. Civil Serv. Commission</u>, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted). Thus, when analyzing the amount offered in settlement, the Court should examine "the complete package taken as a whole," and the amount is "not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." <u>Id</u>., 688 F.2d at 625, 628.

Plaintiff asserts that if the per diem and allowance payments are included in settlement class members' regular rates, the additional wages owing amounts to $605,886. (Doc. 18 at 22, Pawlenko Decl. ¶ 25.) This consists of $386,347 in overtime ($16.32 per hour x 23,666 overtime hours worked) and $219,539 in double time ($65.30 per hour x 3,362 double time hours worked). (<u>Id</u>.) According to the Plaintiff, the Settlement recovers $525,000, approximately 86 percent of the total amount of overtime and double time wages that could be recovered if the claims are successfully litigated. (Doc. 18 at 22.)

With respect to the derivative claim for waiting time penalties, Plaintiff estimated the exposure at $2,615,100. (Doc. 18 at 22; Pawlenko Decl. ¶ 26.) However, Plaintiff claims that it is doubtful whether any waiting time penalties could actually be recovered in light of OneStaff's defenses. (Doc. 18 at 22.) First, OneStaff argues that it is exempt from Labor Code section 203 because it qualifies as a

13

1  "temporary services employer" within the meaning of Labor Code section 201.3. (Doc. 18 at 22; see

2  Pawlenko Decl. ¶ 26.) Second, OneStaff argues that because the alleged overtime violations occurred

3  prior to the Ninth Circuit's decision in Clarke, there is a "good faith dispute" that precludes the

4  imposition of waiting time penalties. (Id., citing Cal. Code Reg. tit. 8, § 13520 ("a good faith dispute

5  that any wages are due will preclude imposition of waiting time penalties under Section 203").) "To

6  determine whether a settlement 'falls within the range of possible approval' a court must focus on

7  'substantive fairness and adequacy,' and 'consider plaintiffs' expected recovery balanced against the

8  value of the settlement offer.'" Collins v. Cargill Meat Sols. Corp., 274 F.R.D. 294, 302 (E.D. Cal.

9  2011) (quoting In re Tableware Antitrust Litig., 484 F.Supp.2d at 1080) Plaintiff contends that

10  considering these substantial risks, the Settlement's recovery of approximately 20 percent of the total

11  amount of estimated waiting time penalties is an excellent result. (Doc. 18 at 22.) Despite that the

12  average award to class members is only $505, the Court agrees that the risks and the amount agreed

13  upon supports approval of the Settlement.

14      **1. The Effectiveness of the Proposed Method of Distributing Relief**

15      The Court is to consider "the effectiveness of any proposed method of distributing relief to the

16  class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). As

17  discussed above, the parties have agreed that the class members are not required to submit a claim form

18  to receive their share of the settlement amount. (Doc. 18 at 12) Also, the share of any class member

19  who chooses to opt out will be redistributed to the participating members of the class. Id. Collective

20  members must opt-in to receive their share of the settlement. Id. The shares of the those who do not

21  choose to participate will be redistributed to the participating members of the collective. Id.

22      The notice will state the number of workweeks credited to each member and the Estimated

23  Class Award and the Estimated FLSA Collective Award. (Doc. 19-4 at 4) It also includes a procedure

24  for claimants to dispute the identified number of workweeks. The Court finds the method of notice and

25  follow-up reminders are sufficient to provide the best notice practicable under the circumstances.

26  Considering these facts, the Court finds the proposed method of distributing relief is effective, and

27  weighs toward finding the Settlement is fair, reasonable and adequate.

28  ///

14

### D.    Extent of Discovery Completed and Stage of the Proceedings

Before reaching the Settlement, Plaintiff's counsel served multiple sets of written discovery, reviewed the arbitration documents, analyzed whether the class action waiver is enforceable, and obtained complete damages data including the precise number of overtime and double time hours worked by the settlement class and the average amount of per diem and allowance payments made. (Doc. 18 at 23; see Pawlenko Decl. ¶¶ 8-13.) Plaintiff claims she arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case. (Doc. 18 at 23.) Consequently, this factor supports preliminary approval of the Settlement.

### E.    Experience and Views of Counsel

In general, "[g]reat weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." See Nat'l Rural Telecomms., 221 F.R.D. at 528. As detailed in the attorney declaration, class counsel is experienced in wage and hour class actions, has been appointed class counsel in numerous other wage and hour cases, and recommends that the Settlement be approved. (Doc. 18 at 23; see Pawlenko Decl. ¶¶ 2-5, 27.)

### F.    Reaction of Class Members to the Proposed Settlement

Plaintiff has agreed to the terms of the Settlement Agreement. However, this factor shall be revisited prior to final approval of the Settlement because Class Members have not yet received notice of the Settlement terms.

### G.    Collusion between Negotiating Parties

The inquiry of collusion addresses the possibility that the settlement agreement is the result of either "overt misconduct by the negotiators" or improper incentives of class members at the expense of others. Staton, 327 F.3d at 960. Plaintiff reports that the Settlement is the product of negotiation conducted before a neutral mediator. (Doc. 18 at 24; see Pawlenko Decl. ¶ 14, citing Carlin v. DairyAmerica, Inc., 328 F.R.D. 393, 405 (E.D. Cal. 2018) ("The use of mediators, though not dispositive, supports a finding that the settlement agreement is not the product of collusion."))

The plaintiff argues that there is no indication the agreement was the product of collusive conduct. As discussed more fully below, the fee award does not indicate evidence of collusion. Also, the plaintiff has conducted significant discovery and had the full information needed to determine the

appropriateness of the "legal and factual issues surrounding the case" at the time he entered into the settlement agreement. Doc. 18 at 23.  Thus, this factor weighs in favor of approval of the Settlement.

### H.    Attorneys' Fees

The Settlement provides for an award of attorneys' fees of up to 25% of the gross settlement amount. (See Settlement ¶ 4.8.) The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark. Powers v. Eichen, 229 F.3d 1249, 1256 (9th Cir. 2000). Furthermore, though the agreement contains a "clear sailing provision, it encompasses only fee awards at or below the benchmark established by the Ninth Circuit. (Doc. 18 at 24) Also, the agreement allows for the possibility that the Court may award a fee below the benchmark. Moreover, any amount of the requested fees not approved by the Court will be included in the distribution to the settlement class, rather than reverting to the defendant. (See id., citing Carlin, 328 F.R.D. at 405 ("The lack of a reversion provision—and the redistribution plan directly to injured [employees]—is highly commendable and weighs heavily in favor of settlement."))

In general, the party seeking fees bears the burden of establishing that the fees and costs were reasonably necessary to achieve the results obtained. See Fischer v. SJB-P.D., Inc., 214 F.3d 1115, 1119 (9th 2000). Therefore, a fee applicant must provide time records documenting the tasks completed and the amount of time spent on the action. Hensley v. Eckerhart, 461 U.S. 424, 424 (1983); Welch v. Metropolitan Life Ins. Co., 480 F.3d 942, 945-46 (9th Cir. 2007). Because the percentage of the gross fund is within the accepted range outlined by the Ninth Circuit, this amount is approved preliminarily. The Court will determine the exact amount of the fee award upon application by class counsel for approval of fees.

### I.    Representative Enhancement

The Court is also to consider whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). In determining this, the Court determines whether the settlement "improperly grant[s] preferential treatment to class representatives or segments of the class." In re Tableware Antitrust Litig., 484 F.Supp.2d at 1079. In assessing the appropriateness of class representative enhancements or incentive payments, the Court may consider factors such as the actions the plaintiffs took to protect the interests of the class, the degree to which the class has benefitted, the

amount of time and effort the plaintiff expended in pursuing litigation, and any notoriety or personal difficulties encountered by the representative plaintiff. <u>Khanna v. Intercon Sec. Systems, Inc.</u>, 2014 WL 1379861, at *10 (E.D. Cal. Apr. 8, 2014); <u>Reibstein v. Rite Aid Corp.</u>, 761 F.Supp.2d 241, 257 (E.D. Penn. 2011); see also <u>Staton</u>, 327 F.3d at 975-77 (9th Cir. 2003). "Incentive awards are particularly appropriate in wage-and-hour actions where plaintiffs undertake a significant 'reputational risk' by bringing suit against their former employers." <u>Bellinghausen v. Tractor Supply Co.</u>, 306 F.R.D. 245, 267 (N.D. Cal. 2015) (citation omitted).

As noted above, the settlement agreement awards damages on a pro rata basis based upon the number of workweeks. Doc 19-4 at 4. The Court finds this is a presumptively reasonable manner of equitably treating the Class Members and collective members for purposes of preliminary approval. On the other hand, the request for an enhancement for the named plaintiff is not supported. (Doc. 18 at 11) There is no evidence provided to explain why the plaintiff should receive any incentive award, let alone why it should be in the amount proposed by the plaintiff. Indeed, the mount sought is more than ten times that of the average award the class members will receive.  Also, the evidence demonstrates that the plaintiff no longer worked for the defendant at the time she filed this litigation (Doc. 19-1 at 4), militating against a finding that she faced risks caused by continuing to work for an entity against whom she was proceeding in litigation.

Accordingly, the Court finds this factor fails to demonstrate that the Settlement is fair, reasonable and adequate, and weighs against preliminary approval of the settlement. Rather, it suggests the plaintiff was working in her own interests and that she is not treating the class members equitably. Nevertheless, because it is possible the plaintiff could support a claim for an enhancement, the Court will permit the plaintiff to submit detailed evidence in her demonstrating her entitlement to an enhancement and supporting the amount of the incentive sought in connection with the request for final approval of the settlement.

## APPROVAL OF CLASS NOTICE

A class notice must satisfy the requirements of the Federal Rules of Civil Procedure, which provides the notice "must clearly and concisely state in plain, easily understood language" the following information:

(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). A class notice must be "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." See Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950).

**I.      Content of the Notice**

Plaintiff asserts that the notice is written in plain language and contains all of the information required by Rule 23(c)(2)(B). (See Exh. 4 (Notice).) Plaintiff also alleges that the release covers claims "which relate to the wage and hour and California Labor Code claims alleged in the Complaint or relate to other claims that could have been alleged based on the facts asserted in the Complaint." (See Settlement ¶¶ 1.25, 7.1.) Plaintiff alleges therefore that the release is properly limited to claims related to the factual allegations in the Complaint. (Doc. 18 at 26.)

**II.      Method and Administration of Notice**

All members of the settlement class and collective will be sent, via First Class Mail, a notice of the Settlement. (Doc. 18 at 25; see Pawlenko Decl. ¶ 20; Settlement ¶ 1.18; Exh. 4 (Notice).) Settlement class members will have 45 days to opt-out of the Settlement, object to the Settlement, or dispute the number of qualified workweeks attributed to them. (See Settlement ¶ 6.1.) Likewise, settlement collective members will have 45 days to opt-in to the Settlement, object to the Settlement, or dispute the number of qualified workweeks attributed to them. (See id.)

**III.      Required Revisions to the Notice**

The notice must be modified to include information in this order, including the date of this Court's preliminary approval and Final Approval Hearing, and deadlines for filing an opt out or opt in statement or objection to the Settlement. Likewise, the documents must be modified to include the relevant information, including the address and phone numbers of the settlement administrator. If Plaintiff intends to issue a Spanish language translation of the notice, they are reminded that the Court requires a declaration that the notice was translated by a certified court interpreter, asserting the translation is an accurate translation of the Court-approved English version of the notice.

## APPOINTMENT OF CLAIMS ADMINISTRATOR

The parties propose that the Court appoint CPT Group, Inc. to serve as the Claims Administrator. (Doc. 17 at 3.) Under the terms of the Settlement, the Claims Administrator "will perform the duties of, among other things: (i) mailing the Notice in English to Settlement Class and Collective Members; (ii) performing an NCOA search and skip-tracing; (iii) tracking and addressing FLSA Consent Forms, Opt-Out Letters, Objections, and workweek count disputes; (iv) notifying the Parties regarding submitted FLSA Consent Forms, Opt-Out Letters, Objections, and workweek count disputes consistent with this Agreement; (v) issuing payments consistent with this Agreement; and, (vi) determining any appropriate tax withholdings from the wage portion of payments to Participating Settlement Class and Collective Members, making the appropriate payments based on withholdings and the employer's share of payroll taxes, and issuing any required tax paperwork." (Settlement ¶ 1.3.) The Claims Administrator's payment shall not exceed $25,000.00. (Settlement ¶ 4.9.) The Claims Administration Costs shall be paid from the Gross Settlement Amount and any amounts that are not used to pay the Claims Administrator shall be redistributed on a pro rata basis to all participating settlement class and collective members. (Id.) Based upon the recommendation and request of the parties, CPT Group, Inc. is appointed as the Claims Administrator.

## CONCLUSION AND ORDER

Based upon the foregoing, the Court finds the proposed class settlement is fair, adequate, and reasonable. The factors set forth by the Ninth Circuit weigh in favor of preliminary approval of the settlement agreement. Moreover, preliminary approval of a settlement and notice to the proposed class is appropriate "if [1] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval." In re Tableware Antitrust Litig., 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007) (quoting Manual for Complex Litigation, Second § 30.44 (1985)). Here, the proposed settlement agreement satisfies this test. Accordingly, the Court **RECOMMENDS**:

    1.  Plaintiff's motion for preliminary approval of class action settlement (Doc. 17) be **GRANTED**.

2. The following Class be **CERTIFIED** for settlement purposes only:

> All non-exempt hourly healthcare professionals employed by OneStaff in California at any time from September 30, 2016 and September 19, 2020 who worked overtime and received hourly per diems, hourly housing allowances, and/or hourly travel allowances.

3. The following FLSA Collective be **CERTIFIED** for settlement purposes only:

> All non-exempt hourly healthcare professionals employed by OneStaff in California at any time from September 30, 2017 and September 19, 2020 who worked overtime, as defined under the FLSA, and received hourly per diems, hourly housing allowances, and/or hourly travel allowances.

4. The Court find that, for purposes of the settlement, the above-defined Class meets the requirements for class certification. For purposes of the settlement, the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(3) are satisfied.

5. Plaintiff's counsel, Hayes Pawlenko LLP, be appointed as counsel for the class and collective.

6. Pamela Madison be appointed as the representative for the class and the collective but that the request for an enhancement be **RESERVED** pending the motion for final approval of the settlement.

7. CPT Group, Inc. be appointed as the claims administrator.

8. The proposed settlement detailed herein be approved on a preliminary basis as fair and adequate.

9. Class counsel's request for fees up to 25% of the gross settlement amount and up to $15,000 in costs be **GRANTED** preliminarily, subject to counsel's petition for fees and review at the Final Approval Hearing. Class and collective members and their counsel may support or oppose this request, if they so desire, at the Final Approval Hearing.

10. The proposed notice be preliminarily **APPROVED**, and the parties be required to file a finalized notice with required revisions for the Court's approval.

11. The Court set a final approval and fairness hearing and schedule based upon the schedule set forth in the motion for preliminary approval.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within 14 days of service of

this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).


IT IS SO ORDERED.

Dated:   **July 20, 2021**               **/s/ Jennifer L. Thurston**
                                   CHIEF UNITED STATES MAGISTRATE JUDGE